

**PROCURADOR
DE LOS DERECHOS
HUMANOS**

Guatemala, 27 de junio de 2017.

Oficio No. 53-2017 AL

M.Sc. Carlos Guillermo Guerra Jordán
Juez
Juzgado Cuarto de Primera Instancia Penal, Narcoactividad y Delitos contra el
Ambiente del Municipio y Departamento de Guatemala
Organismo Judicial

Respetable M.Sc. Guerra Jordán:

Por este medio me dirijo a usted, con el objeto de dar respuesta al oficio s/número
signado por su persona de fecha trece de junio de dos mil diecisiete, mediante el cual
informa que en resolución de fecha siete de junio del año en curso, se ordenó requerir
a la Procuraduría de los Derechos Humanos, que rinda informe de la participación en
los allanamientos realizados por el Ministerio Público, dentro de la causa identificada
con el número CERO MIL CUATRO GUIÓN DOS MIL DIECISEIS GUIÓN CERO CERO
NOVECIENTOS CINCUENTA Y UNO (01004-2016-00951).

Por lo anterior expuesto, remito a usted, copia simple del informe realizado por la
Licenciada Gloria Patricia Castro Gutiérrez, Defensora de la Niñez y Adolescencia de
ésta Institución, enviado con fecha veintitrés de septiembre de dos mil dieciséis a la
Licenciada Rosa Delia Pérez Gudiel Fiscal de Delitos contra la Niñez y Adolescencia
del Ministerio Público.

Sin otro particular, me suscribo de usted,

Atentamente,

Licda. Ana Lucrecia Dollagaray Quintero
Directora de Procuración
Auxiliar Departamental de Guatemala

c.c. Archivo
Adjunto: Informe de 11 folios

DENUNCIA

Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

*Licda. Rosa Delia Pérez Gudiel*
AGENTE FISCAL
Fiscalía de Delitos Contra
la Niñez y Adolescencia
MINISTERIO PÚBLICO

REF. FISCALÍA DE NIÑEZ Y ADOLESCENCIA
UEAI 360-2016
CAUSA: 01004-2016-00951
AGENCIA 4 MALTRATO

Guatemala,  23 de septiembre de 2016

DIRECCIÓN DE PROCURACIÓN
PROCURADOR DE LOS DERECHOS HUMANOS

2 6 SET. 2016

HORA:
FIRMA:

Licenciada
Rosa Delia Pérez Gudiel
Fiscal de Delitos Contra la Niñez y Adolescencia
MINISTERIO PÚBLICO

Estimada Licenciada Pérez Gudiel

En cumplimiento a la solicitud hecha por el Auxiliar Fiscal I, Jorge Carlos Chacón Ayala en oficio UEAI 360-2016 , CAUSA: 01004-2016-00951, AGENCIA 4 MALTRATO de fecha 8 de septiembre de 2016,  por este medio le estamos haciendo llegar el informe relacionado con el allanamiento a 7 inmuebles, llevado a cabo el 13 de septiembre de 2016.

I. **Antecedentes:**

Por medio de Oficio UEAI 3602016, de fecha 8 de septiembre de 2016, el Auxiliar Fiscal I, Jorge Carlos Chacón Ayala, de la Fiscalía de la Niñez y Adolescencia del Ministerio Publico, solicitó a la Institución del Procurador de los Derechos Humanos, nombrar personal para prestar acompañamiento en la realización de allanamientos a 7 inmuebles, a realizarse el 13 de septiembre de dos mil dieciséis . Siendo el punto de reunión el Edificio Gerona ubicado en la 15 avenida 15-16 zona 1, a las 03:00  de la mañana.

Para dar cumplimiento al requerimiento del Ministerio Público, personal de la Institución del Procurador de los Derechos Humanos,  se constituyó en la sede central del Ministerio Público el día 13 de septiembre de 2016, a las 3 horas con 10 minutos de la mañana.  En lugar estaban presentes delegados de Procuraduría General de la Nación –PGN- , Policía Nacional Civil –PNC- , la División Especializada en Investigación Criminal, Ministerio Público y traductores.

La Licenciada Rosa Delia Pérez Gudiel, Fiscal de Delitos contra la Niñez y Adolescencia, informó que con base en la orden judicial identificada  REF.01004-2016-00951 firmada por la licenciada Anabella Acevedo Estévez, Juez Cuarto de Primera Instancia Penal, Narcoactividad y Delitos Contra el Ambiente, el Ministerio Público procedería al

 **PROCURADOR**
**DE LOS DERECHOS**
**HUMANOS**

Procurador de los Derechos Humanos  /  PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

allanamiento, inspección y registro de 7 inmuebles  donde habitan miembros de la comunidad Lev Tahor, quienes se denominan como Judíos ultra ortodoxos. La diligencia fue autorizada en virtud que el Ministerio Público está investigando una denuncia por supuestos maltratos hacia niños, niñas y adolescentes que son miembros de dicha comunidad.  Indicó que para la realización de dicha diligencia formaríamos siete grupos, de los cuales 5 serían para la ciudad capital y 2 en el departamento de Santa Rosa. Asimismo indicaron que uno  de los inmuebles era un edificio por lo  sería allanado piso por piso.

De la institución del Procurador de los Derechos Humanos participó el siguiente personal: **Gabriel Eduardo Hernandez Rodríguez, Paola Arana Estrada , Luis Gerardo Baños Ochaeta, Carlos Roberto Galich Monzón, Licenciada Gloria Patricia Castro Gutierrrez, Juan Wiltérico De León López,   Dino Alfredo Villalta Martinez, Camilo Esteban Aval  Sincur, Karen Paola Castillo, Rosa Elena Berger Baños, Yuri Mauricio García Granados Delgado,  Sender Andres Escobar Rodriguez**,  quienes fueron asignados 2 en cada equipo que cubriría los allanamientos de acuerdo a la organización del Ministerio Público.  Los allanamientos iniciaron a las 6:00 de la mañana y  los equipo se conformaron  por Auxiliares Fiscales del Ministerio Público, Agentes de la Dirección de Investigaciones Criminalísticas -DICRI-, una Psicóloga, una Trabajadora Social, un traductor,  todos liderados por el Ministerio Público  y uno o dos representantes de la Procuraduría de los Derechos Humanos.

Los inmuebles que fueron allanados, inspeccionados y registrados fueron los siguientes:

1) 4ª. Calle 4-31 Zona 09 del municipio de Guatemala, departamento de Guatemala.
2) 4ª. Calle 4-55 Zona 09 del municipio de Guatemala, departamento de Guatemala.
3) 5ª. Avenida B 3-63 zona 09 del municipio de Guatemala, departamento de Guatemala.
4) 3ª. Calle 0-45 zona 09 del municipio de Guatemala, departamento de Guatemala.
5) 4ª. Calle 1-07 zona 09 del municipio de Guatemala, departamento de Guatemala.
6) Terreno con construcción tipo bodega, techo de lámina, ubicada en el kilómetro 94 Carretera El Salvador, aldea El Amatillo, municipio de Oratorio, departamento de Santa Rosa.
7) Terreno con portón de metal sin visibilidad de algún tipo de construcción ubicada en el kilómetro 94 Carretera El Salvador, aldea El Amatillo, municipio de Oratorio, departamento de Santa Rosa.



 PROCURADOR DE LOS DERECHOS HUMANOS

Procurador de los Derechos Humanos  /  PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

**II. Diligencias realizadas en cada uno de los inmuebles allanados:**

**Allanamiento del inmueble ubicado en la 3° Calle 0-45 zona 9 de la ciudad capital:**

El día 13 de septiembre de 2016, el oficial Gabriel Eduardo Hernandez Rodríguez, delegado de la IPDH, acompañó el allanamiento en el inmueble ubicado en la 3° Calle 0-45 zona 9 de la ciudad capital informando:  A) Al constituirse en el lugar se procedió a corroborar que la dirección consignada en la orden judicial era la del inmueble.  B)  El Ministerio Público procedió a solicitar el acceso al inmueble,  sin embargo la respuesta fue negativa, por lo que se les indicó por parte de las autoridades,  que se procedería a romper la puerta para ingresar al mismo, por lo que inmediatamente atendió, el señor Oscar Adrián Chávez Román,  quien expresó que dicho inmueble era de su propiedad, permitiendo el ingreso al mismo  para la realización del allanamiento. C) El Ministerio Público, con elementos de la División Especializada en Investigación Criminal,  determinó que el inmueble estaba conformado por 27 pequeños apartamentos, procediendo a solicitar a las personas que salieran de los mismos y se identificaran plenamente.  Se identificó que dos  de los 27 apartamentos  son  ocupados por personas que profesan la religión Judía, a quienes se les hizo saber el motivo de la diligencia y se inició con el registro de dichos apartamentos.

En el primer apartamento encontraron a 4 adultos un hombre y tres mujeres, en el mismo 2 niños un hombre y una mujer. Todos de nacionalidad salvadoreña. En el segundo apartamento se localizaron a 2 adultos un hombre y una mujer ambos de nacionalidad salvadoreña, así como dos personas menores de edad,  uno de los niños de nacionalidad guatemalteca y el más pequeño no estaba inscrito Registro Nacional de las Personas.  D) La Procuraduría General de la Nación, fue la encargada de verificar  las condiciones físicas de los niños y niñas encontrados en estos apartamentos, estableciendo que  se encontraban en buenas condiciones físicas no existiendo alguna señal de maltrato físico. En relación al niño de 3 meses de nacido, la Procuraduría General de la Nación instó a los progenitores, para que a la brevedad realizarán la inscripción respectiva en el Registro Nacional de las Personas de la República de Guatemala. E) En la presente diligencia no se encontró evidencia relacionada con la investigación de acuerdo a lo observado y establecido por las instituciones a cargo de la diligencia,  la cual se concluyó a las 8:10 am.

*Por una Guatemala más humana y solidaria*



 *Procurador de los Derechos Humanos* / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

**Allanamiento al inmueble ubicado en la 4ta calle 1-07, zona 9 de la Ciudad de Guatemala con número de contador G-49800.**

El día lunes 13 de septiembre de 2016,  la oficial Paola Arana Estrada y el oficial Luis Gerardo Baños Ochaeta,  delegados de  la Institución del Procurador de los Derechos Humanos, acompañaron al equipo. Se presentaron a las 6:00 horas de la mañana, para inciar el allanamieto verificando: a)  Que la dirección consignada era la correcta con el número de contador. B)  El MP  procedió a tocar la puerta, luego de 10 o 15  minutos salió a atender   una persona quien manifestó ser el lider de dicha comunida y autorizó el ingreso, por lo que el grupo se dirigió  al segundo nivel del inmueble donde se ubicaban 5 familias, cada una viviendo en un cuarto, en total se ubicaron 4 hombres y 7 mujeres, así como 5 niños y 1 niña. C) El personal del Ministerio Publico, informó a las personas que se encontraban dentro del inmueble el porqué de su presencia y que debían realizar el allanamiento, para lo que contaban con orden judicial. En este sentido todas las personas colaboraron sin problema entregaron sus documentos de identificación y pasaportes. Las autoridades encargadas procedieron a verificar los mismos,  estas personas eran de nacionalidad salvadoreña.   D) Se observó que las instituciones actuaron apegados a derecho velando siempre por el interés superior de los niños, niñas y adolescentes y se respetaron los derechos humanos de todos los habitatentes del inmueble.    E) La Procuraduría General de la Nación  verificó que uno de los niños no contaba con inscripción en el Registro Nacional de las Personas, por lo que personal realizaron su traslado a la sede central, junto con los padres de familia para que iniciaran el proceso de inscripción extemporánea, así mismo por parte de las autoridades se coordinó  con la Dirección General de Migración, pues una de las mujeres que  se encontraba en este inmueble estaba en el país de  forma irregular.

**Allanamiento en el inmueble ubicado en la 4ta calle, 4-31, zona 9, de esta ciudad capital:**

El 13 de septiembre de 2016, a las 6:00 de la mañana se inició el  allanamiento a este inmueble, para lo que estaba delegado de la IPDH el oficial Carlos Roberto Galich Monzón y Licenciada Gloria Patricia Castro Gutierrez, en el mismo se verificó: A)  Que la dirección no corresponde al inmueble que debe ser registrado,  por tal motivo la IPDH se retira del lugar notificando a la Fiscal del Ministerio Público, encargada del operativo, que el allanamiento era ilegal tóda vez no era la dirección consignada en la orden del juzgado. B)  El Ministerio Público inicio el procedimiento para solicitar la ampliación de la orden al inmueble que se identifica como 4ª calle 4-37 zona 9 del municipio de Guatemala,

Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A. www.pdh.org.gt

departamento de Guatemala para proseguir con la intervención.    En este momento se presenta el Abogado Salvador Soto, quien representa a los miembros de la comunidad y el señor Mynor Antonio Guzmán quienes apoyaron a mediar y solventar entre los miembros de la comunidad que estaban asustados, molestos e indignados por el allanamiento  y se mostraban renuentes a aceptar la orden del Juzgado. La Licenciada Roda Delia Pérez Gudiel, de la Fiscalía de Delitos contra la Niñez y Adolescencia, solicitó a la Licenciada Gloria Castro, que estuviera presente durante esta diligencia,  procediendo ellos a aclarar el tema de la dirección del inmueble e  indicando que se estaba tramitando la ampliación de la orden judicial.   Además les  explicó a los presentes nuevamente el objetivo del allanamiento.  Acordaron que se retiraría la PNC y que la misma únicamente custodiara la puerta para que no saliera e ingresaran personas. Una persona de la comunidad apoyaría conjuntamente con el Abogado y el Señor Guzmán el recorrido  y diligencias dentro del edificio. En esta reunión los miembros de la comunidad expusieron que estaban inconformes y muy  molestos por la presencia de un traductor en otro de los inmuebles donde ya se estaba desarrollando el allanamiento estaba tomando fotos, videos, mensajes de voz  y que presumían que los estaba enviando a la embajada de Israel.  Por lo que el traductor se retiró del edificio aproximadamente a las 10:00 de la mañana.  C)  Luego de lo anterior se reanuda el allanamiento al inmueble a las 12:00 horas,  ingresando nuevamente al edificio, el cual consta de seis niveles,  observando que en cada uno de ellos se cumpliera con la inspección e identificación de las personas adultas y de los niños, niñas y adolescentes. Lo cual se desarrolló de forma adecuada y apegados a la ley,  en algunos apartamentos más fácilmente que en otros además por la cantidad de niveles y que en cada uno de ellos había que explicar la situación a las personas y en la mayoría de los apartamentos hubo resistencia por parte de los habitantes a entregar documentos de identificación tanto de adultos como de niños, niñas y adolescentes. Sin embargo en todos lograron las autoridades hacer la identificación respectiva.   En lo que respecta a los niños niñas y adolescentes se logró que todos estuvieran en sus apartamentos con sus respectivas familias para evitar dispersión ya que varios estaban recibiendo sus clases y realizando sus rezos de acuerdo a su práctica religiosa y se corría el riesgo de que alguno quedará sin identificar y verificar signos de maltrato físico por parte de Procuraduría General de la Nación quien determino que ninguno de los niños, niñas y adolescentes de este edificio presentaba signos de maltrato físico . Es importante mencionar que en cada apartamento se pudo observar que había familias con un aproximado de 6 a 8 niños niñas. D)  Es importante hacer notar, que el edificio en general no presenta las condiciones para ser utilizado como vivienda, aunque  es visible que se han hecho trabajos tratando de



condicionarlo  para este fin.  Al ingreso del edificio se observan tres grandes tinajas las que son utilizadas para depositar desechos sólidos de los diversos apartamentos además se encontraban abiertos, lo que provocaba mal olor siendo los mismos un foco de contaminación. Se observó hacinamiento por la cantidad de personas que lo habitan.  Hay poca ventilación e iluminación.  E) En general en el allanamiento se observó por parte del personal del Ministerio Público y los agentes de la PNC, y de la Procuraduría General de la Nación que mantuvieron  una buena comunicación con los habitantes del  inmueble, no habiendo existido uso desmedido de la fuerza o abuso de las facultades de cada una de las instituciones.

**Segundo allanamiento al inmueble ubicado en la 4ta, Calle 4-55 de la zona 9**

En este inmueble  fueron asignados los oficiales Juan Witerico De León  López y  Dino Alfredo Villalta Martinez,  como delegados de la Procuraduría de Derechos Humanos. A las seis horas se dirigieron al inmueble donde se encontraron: A) que el inmueble estaba dividido en dos complejos habitacionales separados por una pared pero con la misma dirección. Por lo que se dividieron con el equipo encargado  se dirigió a los  apartamentos que se encontraba al lado izquierdo. Corroborando que la dirección coincidía con la que estaba consignada en el orden judicial.  El traductor que acompañaba fue quien indicó a las personas que se encontraban dentro del apartamento que se trataba de un operativo del Ministerio Público y que se contaba con una orden judicial para llevar a cabo el allanamiento y que era necesario que mostraran sus documentos de identificación.  B) De igual forma en cada uno de los apartamentos  que revisaron de ese lado del edificio se negaban a entregar documentos, aunque luego de explicarles varias veces  que su negativa podría traer otras consecuencias por lo que finalmente colaboraban. En uno de los apartamento a pesar de las explicaciones  y agotar los tiempos de advertencia que hacía la autoridad, no hubo una respuesta positiva por lo que los agentes de la Policía Nacional Civil procedieron a romper un pequeño vidrio para poder abrir la puerta del inmueble, logrando realizar la inspección registro y la identificación de las personas. Luego ingresó Procuraduría General de la Nación, a los apartamentos procediendo a realizar la revisión física de los niños, niñas y adolescentes que se encontraban en ellos, indicando que no encontraron indicios de maltrato físico en ninguno de ellos.

En el allanamiento realizado en el otro lado del mismo inmueble misma dirección, se inició el procedimiento a las 6:00 de la mañana, y quien acompañaba como delegado de la IPDH fue el oficial Juan de León,  quien observó que al llegar al portón principal del inmueble, las autoridades tocaron la puerta y no contestaron, por lo que PNC procedió a forzar la



 Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

puerta para poder ingresar y luego se dirigieron a una de las apartamentos tocaron reiteradamente.  Hasta que el señor Joel Helhbrants, de nacionalidad Judía, de 23 años, abrió la ventana de la puerta, explicándole, el motivo de la presencia de las instituciones y solicitó quince minutos para comunicarse con el abogado para que lo llegará a apoyar, sin embargo al termino de los quince minutos no abrió la puerta por lo que el Licenciado Misael Torres, agente fiscal dio la orden a la Policía Nacional Civil, para que utilizarán la fuerza procedieron a romper una ventana pequeña, por donde un agente de la PNC, introdujo su brazo para poder abrir la chapa de puerta luego ingresaron las autoridades.

En este inmueble se encontró medicina en abundancia, cheques, pasaportes, varias camas y cunas en cada cuarto, y se entrevistó a Joel Helhbrants a quien le preguntaron sobre algunos documentos americanos que tenía en su poder a lo que respondió que los documentos los tenía porque había trabajado de supervisor en los Estados Unidos y que estaba tratando de empezar un nuevo trabajo.  Se inspeccionaron los cuartos, encontrando en una de las habitaciones a la esposa del señor Helhbrants. El Ministerio Público, indica que encontraron 6 niños de los cuales al inicio únicamente habían presentado documentos de dos de ellos faltando los documentos de cuatro niños, logrando al final que presentará toda la documentación.  La trabajadora social de la Procuraduría General de la Nación y la intérprete entrevistaron a la madre y revisaron los pies y manos de los niños, en general su cuerpo indicando que efectivamente se encontraban bien de salud y concluyo la Procuraduría General de la Nación que no encontraron signos maltrato de físico. El Ministerio Público y Policía Nacional Civil embalaron las medicinas y documentos que encontraron para la investigación.

Luego se procedió a tocar la puerta del otro apartamento, en el cual indicaron que vivía el Rabino de la comunidad, logrando hacer la inspección necesaria y secuestraron medicamentos.  También en uno de los departamentos se comunicó con el señor Sender Andres Escobar Rodriguez, delegado de la Procuraduría de los Derechos Humanos, el agente de la División Especializada en Investigación Criminal –DEIC- de la Policía Nacional Civil, quien indica que las niñas Yocheved Fraida Malka y Blima Roiza Faige Malka, al parecer tienen alerta de desaparecidos de la INTERPOL, por lo que se procedió a informar a la auxiliar fiscal a cargo de ese apartamento para que las autoridades, coordinaran para verificar esta situación, determinándose que las niñas no tenían ninguna alerta; por lo que se le informó a la auxiliar fiscal y se procede a entregar los pasaportes de nuevo a los miembros de la familia.

_Por una Guatemala más humana y solidaria_

**Allanamiento al inmueble ubicado en la 5ª avenida "B" 3-63 de la zona 9 de la ciudad capital**

En este inmueble el oficial Camilo Esteban Aval Sincur y la oficial Karen Paola Castillo delegados de la Procuraduría de Derechos Humanos, fueron quienes acompañaron al equipo. Iniciado el allanamiento a las 6:00 de la mañana corroborando en primera instancia: A) el número de contador para ver si coincidía con la dirección consignada en la orden judicial y como el inmueble esta dividido en tres, se verificó los contadores que correspondía a cada inmueble. Atendió la diligencia el señor Andrés Roberto Palomino Solórzano, quien dijo ser Abogado y Notario, quien fue debidamente notificado de la diligencia que se estaba practicando, entregándosele una copia de la orden de inspección y registro, permitió el ingreso de las autoridades para verificar en los 3 apartamentos.

**Primer apartamento**

En este departamento atendió el señor Andrés Roberto Palomino Solórzano, quien dijo ser Abogado y Notario, quien fue debidamente notificado de la diligencia que se estaba practicando, entregándosele una copia de la orden de inspección y registro, permitió el ingreso de las autoridades sin embargo en este departamento no habían personas que pertenecieran a la comunidad judía.

**Segundo apartamento:**

En esta vivienda, habían personas que formaban parte de la comunidad, sin embargo en la misma habitan solo mujeres, por lo que únicamente ingresó la señora Karen Paola Castillo Vásquez, Auxiliar de la Defensoría de la Niñez y Adolescencia, quien observó que se localizó a una familia integrada por la abuela, hija y sus dos hijos, y una persona que apoya con el que hacer de la casa que no pertenece a la comunidad judía. Las personas presentaron su documentación tanto de los adultos y de los niños. La PGN corroboró que los niños no presentaban signos de maltrato físico. El único hallazgo fue un arma que no tenía licencia porque el esposo tenía el documento y lo llevaría a la brevedad posible, situación que no se pudo verificar.

**En el Tercer allanamiento realizado en el mismo inmueble:**

El Allanamiento inició a las seis horas con cincuenta y tres minutos, encontrándose dentro de la vivienda las siguientes personas: **a.** Mirna Elizabeth González Castillo. **b.** Patricia Esmeralda Castro Mogollón. **c.** Claudia Fabiola Maldonado Díaz. **(Todas guatemaltecas)** **d.** Marta Silvia Argueta (Ciudadana Salvadoreña, con nacionalidad Polaca). Se les notificó

*Por una Guatemala más humana y solidaria*

Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

y entregó copia de la orden de inspección. Tomando en consideración que dentro del inmueble solo habitan mujeres fuimos retirados del lugar ingresando personal femenino para practicar la diligencia.  Sin embargo en este lugar se tuvo el problema de que no había suficiente personal femenino de las instituciones encargadas de la investigación.

**Allanamiento del inmueble ubicado en Aldea Amatillo, Kilómetro 92 del Municipio de Oratorio, Departamento de Santa Rosa.**

Para la realización del allanamiento a estos inmuebles fueron delegados Rosa Elena Bergues Baños  y el Señor Yuri Mauricio García Granados Delgado, de la Procuraduría de los Derechos Humanos,  quienes,  acompañaron dos grupos donde se pudo observar lo siguiente:

Se  observó que la dirección consignada en los documentos  autorizados por el Juez para la realización del allanamiento, era la correcta. Las autoridades encargadas, les hicieron saber a los habitantes del  inmueble el motivo de la presencia  de los representantes de las instituciones. Así mismo les solicitaron sus documentos de identificación, quienes sin oponer resistencia, cuatro de ellos pusieron a la vista sus documentos a excepción de un adolescente que no se quiso identificar, a quienes se les informó  que si no identificaban al adolescente los tendría que acompañar a la sede central de PGN en  la ciudad  capital. Solicitaron  un  compás  de  espera  hasta  que  llego  el  abogado  quien  presento  los documentos de identificación del adolescente a las diecisiete horas.  Por otro lado,  la Trabajadora Social y Psicóloga de la Procuraduría General de la Nación, solicitaron al adolescente que les permitiera revisar parte su cuerpo, específicamente brazos y pies, verificando que no presentaba signos de maltrato físico.

Durante el registro se observó que en inmueble existe maquinaria de imprenta, con la cual  indicaron que están  elaborando libros., además tres habitaciones del inmueble, donde se encontró mobiliario de las personas, y  entre estos, una cómoda con llave donde guardan libros relacionados a su religión.  El  equipo de cómputo encontrado, fue embalado y confiscado por el Ministerio Público.  En el segundo inmueble atendió el guardián Edy Osorio, quien indicó que solo le pagan por cuidar a los animalitos y el inmueble, las autoridades le presentaron las órdenes de allanamiento y permitió el ingreso de  las autoridades y   procedió a guiar  a las fuerzas de seguridad a la distintas construcciones que conforman el inmueble, observándose una casa de habitación vacía y abandonada, dos habitaciones pequeñas vacías,  que son utilizadas como bodegas, una

*Por una Guatemala más humana y solidaria*



Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt

pileta, una bodega grande que funciona como centro de manufactura de vino y pan Kosher, varios corrales con patos y ovejas, así mismo una construcción grande en progreso, que aparentemente será el centro de vivienda de la comunidad Lev Tahor. El Guardián indico no ha visto ni mujeres ni niños en este inmueble y que los de la comunidad llegan a supervisar la construcción y a los animales. El delegado de la PDH Yuri García se le acercó un miembro de la comunidad quien indicó que eras víctimas de una persecución política por parte del Estado de Israel, de lo que tomo nota.

**III. Observaciones generales de los allanamientos:**

1. En general en el procero de los diversos allanamientos se respetaron los derechos de las personas por parte de los representantes de las diferentes instituciones que estuvieron presentes, utilizando la fuerza en dos departamentos de un inmueble pero en ningún momento fue excesiva. Se respetó el debido proceso durante la diligencia.

2. Los miembros de la comunidad judía presentaron una resistencia sistemática al allanamiento y negativa constante de entregar la documentación requerida por las autoridades, por lo que había que estar repitiendo constantemente el porqué de la diligencia.

3. Se pudo observar debilidad en la organización del Ministerio Público para practicar la diligencia, lo que se notó al momento de ingresar a los diversos apartamentos y había confusión en las indicaciones y criterios para la realización del allanamiento y poco conocimiento de la situación por parte de los delegados del Ministerio Público.

4. En uno de los inmuebles se requirio de ampliar la Orden de Inspección, registro y secuestro porque la dirección estaba incorrecta, lo que hizo que se perdiera el tiempo y que la diligencia se alargara, tiempo durante el cual las personas del edificio no podían movilizarse. No habían comido, por lo que por parte de la PDH se procedio a indicarles en los apartamentos que podía comer y dar de comer a los niños, niñas y adolescentes y lo mismo se hizó en los demás inmuebles en los que se desarrollaban los allanamientos de forma paralela.

5. No tomaron en cuenta que los niños, niñas y adolescentes en los inmuebles se asustarían y alteraría al ver ingresar a sus viviendas a todas las autoridades, especialmente a la Policía Nacional Civil quienes por su función portan armas.

*Por una Guatemala más humana y solidaria*

 **PROCURADOR** **DE LOS DERECHOS HUMANOS**

Procurador de los Derechos Humanos / PBX: 2424-1717
12 Av. 12-54, zona 1 Guatemala C.A.  www.pdh.org.gt



6. Ninguno de los niños, niñas y adolescentes que revisaron durante la diligencia presentaron signos de maltrato físico de acuerdo a lo indicado por Procuraduría General de la Nación. Unicamente trasladaron a un niño para que pudiera ser inscrito en el RENAP y en otro caso instaron a los padres a cumplir con esta responsabilidad lo más rapido posible. Así como una mujer que fue trasladada a migración por no contar con su documentación.

7. Todas las personas tanto adultos como personas menores de edad fueron identificadas a través de sus documentos de identificación, pasaportes y partidas de nacimiento. Observandose que muchos de los pasaportes estaban vencidos, por lo que les solicitó que agilizaran estos tramites de manera urgente.

Sin otro particular, me suscribo atentamente,

Licda Gloria Patricia Castro Gutierrez
Defensora de Niñez y Adolenecia

DENUNCIAS AL
**1555**
www.pdh.org.gt

*Por una Guatemala más humana y solidaria*

Guatemala, June 27, 2017

Office Letter No. 53-2017 AL

M.Sc. Carlos Guillermo Guerra Jordán
Judge
Fourth Court of First Instance Criminal, Drug Trafficking and Crimes against the Environment of the Municipality and Department of Guatemala
Judicial Body

Respetable M.Sc. Guerra Jordán:

By this means I am writing to you, in order to respond to the trade/s  number signed by your person dated in June 13, two thousand and seventeen, which informs that in the resolution of the June 7th  case of the current year, it was ordered to requested to the Human Rights Procuracy, to render a report of the participation in the raids conducted by the Public Ministry, within the case identified with the number ZERO ONE THOUSAND AND FOUR DASH TWO THOUSAND AND SIXTEEN DASH ZERO ZERO NINE HUNDRED FIFTY ONE (01004 -2016-00951).

From  the foregoing, I refer to you, a simple copy of the report made by Ms. Gloria Patricia Castro Gutiérrez, Defender of Children and Adolescents Institution, sent on September 23, two thousand and sixteen to the Attorney Rosa Delia Pérez Gudiel Fiscal of Crimes against Children and Adolescents of the Public Ministry.

Without further ado I subscribe to you,

Sincerely,

Licensed Ana Lucrecia Dollagaray Quintero
Procuracy Director
Departamental Auxiliar of Guatemala

REF. PROSECUTION FOR CHILDREN AND ADOLESCENTS
UEAI 360-2016
CAUSE: 01004-2016-00951
AGENCY 4 MALTREATMENT

Guatemala, September 23, 2016

Licentiate
Rosa Delia Pérez Gudiel
Prosecutor of Crimes against Children and Adolescents
PUBLIC MINISTRY

Dear Licensed Pérez Gudiel

In compliance with the request made by the Prosecutor Assistant I, Jorge Carlos Chacón Ayala in office letter UEAI 360-2016, CAUSE: 01004-2016-00951, AGENCY 4 ABUSE dated September 8, 2016, therefore  We are getting the report related to the raid on 7 properties, carried out on September 13, 2016.

I.      **Background:**

By means of the Office Letter UEAI 3602016, dated September 8, 2016, Assistant Prosecutor I, Jorge Carlos Chacón Ayala, of the Office of the Prosecutor for Children and Adolescents of the Public Ministry, asked the Human Rights Procuracy Institution to appoint personnel to provide accompaniment in the raids on 7 properties, expected to be carried out on September 13, two thousand and sixteen. Being the meeting point the Gerona Building located at 15 avenue 15-16 zone 1, at 03:00 in the morning.

To comply with the request of the Public Ministry, staff of the Human Rights Procuracy Institution was set up at the headquarters of the Public Prosecutor's Office on September 13, 2016, at 3 o'clock and 10 o'clock in the morning. There were delegates from the General's Attorney Office (PNG), the National Civil Police (PNC), the Specialized Division in Criminal Investigation, the Public Prosecutor's Office and some translators.

Ms. Rosa Delia Pérez Gudiel, Prosecutor for Crimes against Children and Adolescents, informed that based on the identified judicial order REF.01004-2016-00951 signed by Analyella Acevedo Estévez, Fourth Criminal Trial Court Judge, Drug-dealing and Offenses Against the Environment were being done so, the Public Ministry would proceed with the break-in, inspection and registration of 7 buildings inhabited by members of the ultra-Orthodox Jewish community, Lev Tahor. The diligence was authorized because the Public Prosecutor's Office is investigating a complaint about alleged abuse of children and adolescents who are members of that community. He indicated that for the realization of this diligence they would form seven groups, of which 5 would be for the capital city and 2 in the department of Santa Rosa. They also indicated that one of the properties was a building so it would be leveled floor by floor.

The following personnel from the institution of the Human Rights Advocate participated: Gabriel Eduardo Hernandez Rodríguez, Paola Arana Estrada, Luis Gerardo Baños Ochaeta, Carlos Roberto Galich Monzón, Gloria Patricia Castro Gutierrrez, Juan Wiltérico De León López, Dino Alfredo Villalta Martinez, Camilo Esteban Aval Sincur, Karen Paola Castillo, Rosa Elena Berger Baños, Yuri Mauricio Garcia Granados Delgado, Sender Andres Escobar Rodriguez, they were assigned 2 in each team which would cover the raids according to the organization of the Public Ministry. The raids began at 6:00 in the morning and the team was made up of Prosecutors from the Public Prosecutor's Office, Agents of the Directorate of Criminal Investigations -DICRI-, a Psychologist, a Social Worker, a translator, all led by the Public Prosecutor's Office and one or two representatives of the Human Rights Ombudsman's Office.

The properties that were searched, inspected and registered were the following:

1) 4th Street 4-31 Zone 09 of the Municipality of Guatemala, department of Guatemala.
2) 4th Street 4-55 Zone 09 of the municipality of Guatemala, department of Guatemala.

3) 5th Avenue B 3-63 zone 09 of the municipality of Guatemala, department of Guatemala.
4) 3rd Street 0-45 zone 09 of the municipality of Guatemala, department of Guatemala.
5) 4th Street 1-07 zone 09 of the municipality of Guatemala, department of Guatemala.
6) Land with cellar construction, roof of sheet, located at kilometer 94 Carretera El Salvador, El Amatillo village, municipality of Oratorio, department of Santa Rosa.
7) Domain with metal gate without visibility of some type of construction located at kilometer 94 Carretera El Salvador, El Amatillo village, municipality of Oratorio, department of Santa Rosa.

## II.     Measures carried out in each of the paved properties:

### Break-in of the property located at 3rd Street 0-45 zone 9 of the capital city:

On September 13, 2016, the official Gabriel Eduardo Hernandez Rodríguez, delegate of the IPDH, accompanied the search of the property located in the 3rd Street 0-45 zone 9 of the capital city, informing: A) It was corroborated that the address entered in the court order was the one of the property. B) The Public Ministry proceeded to request access to the property, however the response was negative, so they were told by the authorities, that they would proceed to break the door to enter it, so they immediately attended by Mr. Oscar Adrián Chávez Román, who declared that the property was his, allowing the entry to the same for the beginning of the search. C) The Public Ministry, with elements of the Specialized Division in Criminal Investigation, determined that the property consisted of 27 small apartments, where they request people to leave them and fully identify themselves. It was identified that two of the 27 apartments are occupied by people who profess the Jewish religion, who were informed the reason for the diligence by the agents that afterward, begun with the registration of said apartments.

In the first apartment they found 4 adults one man and three women, in the same 2 children a man and a woman. All from El Salvador. In the second apartment, 2 adults were found, a man and a woman both of Salvadoran nationality, as well as two minors, one of the children of Guatemalan nationality and the youngest was not enrolled in the National Registry. D) The Office of the General Attorney of the Nation, was in charge of verifying the physical conditions of the children found in these apartments, establishing that they were in good physical condition with no signs of physical abuse. Regarding the 3-month-old child, the General Attorney of the Nation urged the parents and every child present to act quickly so that they will soon make the respective registration in the National Registry of Persons of the Republic of Guatemala. E) In the present procedure, no evidence related to the abuses accused in the investigation was found according to what was observed and established by the institutions in charge of the raids, which were concluded at 8:10 A.M.

### Raid to the property located on 4th Street 1-07, zone 9 of Guatemala City with counter number G-49800.

On Monday, September 13, 2016, Officer Paola Arana Estrada and Officer Luis Gerardo Baños Ochaeta, delegates from the Human Rights Ombudsman Institution, joined the team. They showed up at 6:00 o'clock in the morning, to start the workshop checking: a) They checked that the address entered was the correct one with the counter number. B) The MP proceeded to knock on the door, after 10 or 15 minutes he went to meet a person who said he was the leader of the community and authorized the entry, so the group went to the second level of the property where they were located. They found some families, each living in a room, in total were 4 men and 7 women, as well as 5 children and 1 girl. C) The staff of the Public Ministry, informed the people who were inside the building the reason for their presence and that they had to carry out the search, for which they had a court order. In this sense, all the people collaborated without problems and handed in their identification documents and passports. The authorities in charge proceeded to verify these. The people were of Salvadoran nationality. D) It was observed that the institutions acted in accordance with the law, always taking care of the best interests of children and adolescents and respecting the human rights of all the occupants of the property. E) The Office of the General Attorney of the Nation verified that one of the children did not have an inscription in the National Registry of Persons, so the staff made their transfer to the headquarters, together with the parents to begin the process of extemporaneous inscription, likewise by the authorities coordinated with the General Directorate of Immigration, because one of the women who were in this property was in the country illegally.

**Search of the property located on 4th street, 4-31, zone 9, of this capital city:**

On September 13, 2016, at 6:00 in the morning, the raid was initiated on this property, for which the official Carlos Roberto Galich Monzón and Lic. Gloria Patricia Castro Gutierrez were delegated by the IPDH, in which it was verified that: A) That the address did not correspond to the property that should be registered, for this reason the IPDH exited from the place notifying the Prosecutor of the Public Ministry, in charge of the operation, that the search was illegal since it was not the address entered in the order of the court B) The Public Ministry initiated the procedure to request the extension of the order to the property that is identified as 4th Street 4-37 zone 9 of the municipality of Guatemala,
department of Guatemala to continue with the intervention. At this moment Attorney Salvador Soto is presented, who represents the members of the community and Mr. Mynor Antonio Guzmán who supported him by mediating and resolving among the members of the community who were scared, upset and outraged by the raid and were reluctant to accept the order of the Court. Ms. Roda Delia Pérez Gudiel, from the Office of the Prosecutor for Crimes against Children and Adolescents, asked Ms. Gloria Castro, who was present during this proceeding, to proceed with clarifying the issue of the address of the property and indicating that the extension of the court order was being processed. He also explained to the presents again the objective of the search. They agreed in that the PNC would be withdrawn and that it only guarded the door so that nobody would leave and people would enter. A person from the community supported the lawyer and Mr. Guzmán with the proceedings within the building. In this meeting the community members expressed that they were unhappy and very upset about the presence of a translator in one of the buildings where the raid was already taking place. He was taking pictures, videos, voice messages and assumed that he was sending them to the embassy of Israel. So, the translator left the building at approximately 10:00 in the morning. C) Afterward, the raid on the property is resumed at 12:00 hours, entering the building again, which consists of six levels, observing that in each one of them the inspection and identification of the adults and of children and adolescents. This was developed properly and in accordance with the law, in some apartments more easily than in others also affected by the number of levels and that in each of them had to explain the situation to people and in most of the apartments there was different resistance from the habitants to deliver identification documents of adults and children and adolescents. However, in all of them the authorities managed to make the respective identification. As regards to children and adolescents, it was possible for everyone to be in their apartments with their respective families to avoid dispersion since several were receiving their classes and performing their prayers according to their religious practices and there was a risk that some would remain unidentified and they still needed to verify signs of physical abuse as instructed by the General Attorney of the Nation who determined that none of the children and adolescents in this building showed signs of physical abuse. It is important to mention that in each apartment it was observed that there were families with an approximate of 6 to 8 girls. D) It is also important to note that the building in general did not have the conditions to be used as a home, although it is visible that work has been done trying to condition it for this purpose. At the entrance of the building there are three large jars that were used to deposit solid waste from the various apartments. They were also open, which caused a bad smell, and they were a source of contamination. Overcrowding was observed due to the number of people who occupied it. There was little ventilation and lighting. E) In general in the raid it was observed by the staff of the Public Ministry and the agents of the PNC, and the Attorney General of the Nation that maintained good communication with the inhabitants of the property, without the existence of excessive use of force or abuse of the faculties of each of the institutions.

## Second raid on the property located on the 4th, Calle 4-55 of zone 9

Officials Juan Witerico De León López and Dino Alfredo Villalta Martinez were assigned to this building as delegates of the Human Rights Ombudsman's Office. At six o'clock they went to the building where they found: A) that the building was divided into two housing complexes separated by a wall but with the same address. For what they were divided into teams. One headed to the apartments that were on the left side. Corroborating that the address coincided with that which was consigned in the judicial order. The translator who accompanied was the one who indicated to the people who were inside the apartment that it was an operation of the Public Prosecutor's Office and that there was a court order to carry out the search and that they needed to show their identification documents. B) Similarly, in each of the apartments that they reviewed on that side of the building, they refused to deliver documents, although after explaining several times that their refusal could bring other consequences, they finally collaborated. In one of the apartments despite the explanations and exhaust the warning times that the authority, there

was no positive response so the agents of the National Civil Police proceeded to break a small glass to open the door of the building, accomplishing the registration inspection and the identification of the people. Then, the Attorney General's Office entered the apartments, proceeding to perform the physical examination of the children and adolescents who were in them, indicating that they found no signs of physical abuse in any of them.

In the search conducted on the other side of the same property, the procedure started at 6:00 in the morning, and the one who accompanied the IPDH was the official Juan de León, who observed that when he reached the main gate of the building and the authorities knocked on the door the people did not answer, so PNC proceeded to force the door to enter and then went to the apartments. It was usual procedure until Mr. Joel Helhbrants, a 23-year-old Jewish nationality, opened the door window, explaining the reason for the presence of the institutions and requested fifteen minutes to communicate with the lawyer so that he will be able to support him, however at the end of the fifteen minutes he did not open the door so the Attorney Misael Torres, gave the order to the National Civil Police, to use the force and proceed to break a small window, where an agent of the PNC, introduced his arm to open the door panel and then the authorities entered.

In this building they found medicine, checks, passports, several beds and cradles in each room, and Joel Helhbrants was interviewed. He was asked about some American documents that he had in his possession, and he replied that he had thedocuments because he had worked as a supervisor in the United States and was trying to start a new job. The rooms were inspected, and Mr. Helhbrants' wife was found in one of the rooms. The Public Prosecutor's Office indicated that they found 6 children, of which at the beginning they had only submitted documents of two of them, missing the documents of four children, and finally they were able to present all the documentation. The social worker of the Procurator General of the Nation and the interpreter interviewed the mother and reviewed the children's feet and hands, in general her body indicating that they were indeed in good health and concluded the Attorney General's Office who did not find physical abuse signs. The Public Ministry and the National Civil Police packed the medicines and documents they found for the investigation.

Then they proceeded to knock on the door of the other apartment, in which they indicated that the Rabbi of the community lived, managing to make the necessary inspection and seized medicines. Also in one of the departments he contacted Mr. Sender Andres Escobar Rodriguez, delegate of the Human Rights Procuracy, the agent of the Specialized Division in Criminal Investigation -DEIC- of the National Civil Police, who indicated that Yocheved Fraida girls Malka and Blima Roiza Faige Malka, apparently have INTERPOL missing persons alert, so they proceeded to inform the fiscal assistant in charge of that apartment so that the authorities, coordinate to verify this situation, determining that the girls had no alert; so the fiscal assistant was informed and the passports were handed back to the family members.

### Raid to the property located in the 5th Avenue "B" 3-63 of the zone 9 of the capital city

In this building the official Camilo Esteban Aval Sincur and the official Karen Paola Castillo delegates of the Human Rights Ombudsman, were those who accompanied the team. Initiated the raid at 6:00 in the morning corroborating in the first instance: A) the counter number to see if it coincided with the address entered in the court order and as the property is divided into three, the counters corresponding to each property. Mr. Andrés Roberto Palomino Solórzano attended the procedure, who said he was a lawyer and notary, who was duly notified of the procedure that was being carried out, giving him a copy of the inspection and registration order, allowed the authorities to enter to verify the 3 apartments.

### First apartment

In this department Mr. Andrés Roberto Palomino Solórzano attended, who said he was a Lawyer and Notary, who was duly notified of the diligence that was being practiced, giving him a copy of the inspection and registration order, allowed the authorities to enter the building. There were no people in this department who belonged to the Jewish community.

**Second apartment:**

In this house, there were people who were part of the community, however, only women live there, so only Mrs. Karen Paola Castillo Vásquez, Auxiliary of the Ombudsman for Children and Adolescents, admitted that she located a family consisting of the grandmother, daughter and their two children, and a person who supports with whom to make the house that does not belong to the Jewish community. The people presented their documentation of both adults and children. The PGN corroborated that the children did not show signs of physical abuse. The only finding was a weapon that was not licensed because the husband had the document and would take it as soon as possible, a situation that could not be verified.

**In the Third search conducted in the same property:**

The search began at six hours and fifty-three minutes, and the following people were inside the house: **a**. Mirna Elizabeth González Castillo. **b**. Patricia Esmeralda Castro Mogollón. **c**. Claudia Fabiola Maldonado Díaz (All Guatemalan) **d**. Marta Silvia Argueta (Salvadoran Citizen, with Polish nationality). They were notified and delivered a copy of the inspection order. Taking into consideration that only women live inside the building, we were removed from the place by entering female staff to practice diligence. However, in this place there was the problem that there were not enough female staff from the institutions responsible for the research.

## Trespassing of the property located in Aldea Amatillo, Kilometer 92 of the Municipality of Oratorio, Department of Santa Rosa.

In order to carry out the raid on these properties, Rosa Elena Bergues Baños and Mr. Yuri Mauricio García Granados Delgado, from the Human Rights Ombudsman's Office, were delegates, who accompanied two groups where the following could be observed:

It was observed that the address entered in the documents authorized by the Judge for the realization of the search was correct. The authorities in charge, made it known to the inhabitants of the building the reason for the presence of the representatives of the institutions. They also requested their identification documents, who without opposing resistance, four of them put their documents on display with the exception of a teenager who did not want to be identified, who were informed that if they did not identify the adolescent he would have to accompany them to the PGN headquarters in the capital city. They requested a waiting time until the lawyer arrived who presented the identification documents of the adolescent at seventeen hours. On the other hand, the Social Worker and Psychologist of the Attorney General of the Nation, asked the adolescent to allow them to check part of his body, specifically arms and feet, verifying that he did not show signs of physical abuse.

During the registration it was observed that there is printing machinery in the building, with which they indicated that they are making books., In addition, three rooms of the building, where people's furniture was found, and among these, a dresser with a key where they keep books related to their religion The computer equipment found was packed and confiscated by the Public Ministry. In the second property the guardian Edy Osorio attended, who indicated that only he is paid to take care of the animals and the property, the authorities presented him the search warrants and allowed the entrance of the authorities and proceeded to guide the security forces to the different constructions that make up the property, observing an empty and abandoned room house, two empty small rooms, which are used as warehouses, a pool, a large winery that functions as a Kosher wine and bread manufacturing center, several pens with ducks and sheep, as well as a large construction in progress, which will apparently be the housing center of the Lev Tahor community. The Guardian indicated that he has not seen any women or children in this building and that those in the community come to supervise the construction and the animals. PDH delegate Yuri Garcia was approached by a member of the community who indicated that they were victims of political persecution by the State of Israel, which I note.

### III. General observations of the raids:

1. In general, in the procedures of the various raids, the rights of the people were met by the representatives of the different institutions that were present, using force in two departments of a building, but at no time was excessive. Due process was respected during the diligence.

2. The members of the Jewish community presented a systematic resistance to the raid and constant refusal to deliver the documentation required by the authorities, so they had to be constantly repeating the reason for the diligence.

3. Weakness could be observed in the organization of the Public Ministry to practice diligence, which was noted at the time of entering the various apartments and there was confusion in the indications and criteria for conducting the search and little knowledge of the situation by of the delegates of the Public Ministry.

4. One of the properties was required to extend the Inspection, Registration and Sequestration Order because the address was incorrect, which caused time to be lost and the diligence to be extended, during which the people in the building could not mobilize. They had not eaten, so on the part of the PDH they proceeded to tell them in the apartments that they could eat and feed the children and adolescents and the same was done in the other buildings in which the raids were carried out in a parallel way.

5. They did not take into account that the children and adolescents in the buildings would be frightened and altered when they see all the authorities entering their homes, especially the National Civil Police who, because of their function, carried weapons.

6. None of the children and adolescents who were checked during the procedure showed signs of physical abuse according to what was indicated by the General Procuracy of the Nation. They only moved one child so that he could be enrolled in the RENAP and in another case they urged the parents to fulfill this responsibility as quickly as possible. As well as a woman who was transferred to migration because she did not have her documentation.

7. All persons, both adults and minors, were identified through their identification documents, passports and birth certificates. Observing that many of the passports were expired, he asked them to speed up these procedures urgently.

Without another particular, I subscribe to you,


Licenced Gloria Patricia Castro Gutierrez
Childhood and Adolesence Advocate