UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AARON TELLER,

                            Petitioner,

            -against-

SARA FEIGA HELBRANS,

                            Respondent.
----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
19-CV-3172-SJB

**BULSARA, United States Magistrate Judge:**

Aaron Teller ("Teller") commenced this action by filing a verified petition (the "Petition") under the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11, 670,1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) ("Hague Convention" or "Convention"), and its implementing statue, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11. (Compl. dated May 29, 2019 ("Pet."), Dkt. No. 1 ¶ 1). Since the Petition was filed, Teller has engaged in a pattern of misconduct and paid little attention to and disregarded the obligations attendant to a litigant in a federal civil proceeding. Although Teller ostensibly filed the Petition to have his six children returned to him in Guatemala for custody proceedings, it is obvious to this Court that he has little to no intention of litigating the case. Because time is of the essence in a Hauge Convention case, the Court entered an expedited discovery schedule and set a trial date. In response, Teller first ignored his discovery obligations by refusing to provide documents requested by the other parties. He then failed to appear for his deposition. And finally when his lawyer, frustrated with his client's noncompliance and failure to communicate, moved to withdraw, Teller failed to appear at the motion hearing, even though he was

directed to do so by the Court. Teller—despite being the party who initiated the action and the one bearing the burden of proof—has repeatedly told this Court that he has no intention of appearing for any trial. While foreign citizens may have legitimate reasons not to appear for a civil proceeding—including immigration or other barriers—Teller, who is a U.S. citizen, has never given any reason why he could not appear in a case he initiated. Indeed, a federal statute—the Walsh Act—permits a court to compel and subpoena a U.S. citizen to testify. The Court did so and also eliminated any potential financial barriers to appearance by having the law firm representing Respondent Sara Feiga Helbrans ("Helbrans") pay for Teller's plane fare and hotel accommodations. In response, Teller took various steps to evade service of the Court's subpoena (none of which actually negated the propriety of service) and again reiterated his intention never to appear. It is obvious that Teller's motivation in bringing this case is either to harass the other parties or to obtain some strategic advantage in other litigation (including the New York State custody proceedings that have been stayed because of the filing of the Petition). While a party's motivation in filing suit may be irrelevant, violations of court orders may not so easily be disregarded. The flagrant and repeated disregard of court orders and discovery obligations compels the Court to dismiss Teller's Petition with prejudice.

Helbrans filed a motion to dismiss the Petition with prejudice under Federal Rules of Civil Procedure 37 and 41. (Helbrans's Mot. to Dismiss dated Oct. 18, 2019, Dkt. No. 104; Helbrans's Mem. in Supp. of Helbrans's Mot. to Dismiss dated Oct. 18, 2019, attached to Helbrans's Mot. to Dismiss, Dkt. No. 104 at 1.). Their children, the Respondent-Intervenors, also requested dismissal in separate filings. (Children Teller's Mot. to Dismiss dated Oct. 20, 2019, Dkt. No. 105; C.T.'s Mot. to Dismiss dated Oct. 21,

2019, Dkt. No. 106; Y.C.T.'s Mot. to Dismiss dated Oct. 21, 2019, Dkt. No. 108).[1]  The

Court orally granted the motions to dismiss and dismissed the Petition with prejudice at

a hearing on October 21, 2019.  (*See* Min. Entry & Order dated Oct. 22, 2019; Order

dated Oct. 22, 2019).  The Court provides its written reasons for the dismissal in this

Memorandum and Order.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Teller filed the Petition on May 29, 2019, alleging that his wife, Helbrans,

abducted their six children in October 2018.  (Pet. ¶¶ 26, 36).  Teller asked for the

children to be returned to Guatemala, their alleged habitual residence, for custody

proceedings.  (Relief Requested attached to Pet. ("Relief Requested"), Dkt. No. 1 at 24,

¶¶ (a), (e)).  Teller alleged that he, Helbrans, and the six children are members of the

Jewish community Lev Tahor living in Guatemala and that Helbrans left the community

with the children in violation of Teller's custody rights.  (Pet. ¶¶ 23, 34, 36, 37).  All six

children moved to intervene, and the Court approved their participation.  (*See* Order

dated July 15, 2019 (granting Children Law Center's motion to intervene on behalf of the

"Children Teller"); Order dated Aug. 15, 2019 (granting C.T.'s motion to intervene);

Order dated Aug. 22, 2019 (granting Y.C.T.'s motion to intervene)).[2]  Despite his request

for "adjudication on an expedited basis," (Pet. ¶ 4), Teller has frustrated any speedy

resolution.

---

[1] Although the filings were labeled as letters in some instances, the Court construes them as motions to dismiss.

[2] The Court refers to all six children collectively as "Respondent-Intervenors" and separately only to the extent they were represented by separate counsel; that is, the Children Teller, who are Y.S.T., F.T., D.T., and R.T.; Y.C.T.; and C.T.

In June 2019, the Court adopted Helbrans and Teller's jointly proposed discovery and trial schedule. (Order dated June 24, 2019 (adopting Parties' Joint Proposed Schedule dated June 20, 2019 ("June 20 Schedule"), Dkt. No. 15)). The schedule contemplated the commencement of trial on September 23, 2019. (June 20 Schedule at 1–2).

On July 11, Helbrans moved to compel the production of certain documents. (Helbrans's Mot. to Compel dated July 11, 2019, Dkt. No. 29 at 1). The Court subsequently ordered Teller to produce non-privileged documents in response to Helbrans's document requests and to provide information about a set of emails. (Min. Order dated July 29, 2019). No complete production of responsive documents was ever made. (*See* Decl. of Xiaoxi Tu in Supp. of Helbrans's Reply in Supp. of Mot. for Adverse Interference dated Sept. 12, 2019 ("Tu Decl. Reply Adv. Infer."), Dkt. No. 93 ¶ 8 ("On September 9, 2019, Mr. Teller produced documents . . . . [T]he production . . . consists entirely of documents previously produced in this litigation."); Decl. of Xiaoxi Tu in Supp. of Helbrans's Mot. to Compel dated Aug. 19, 2019 ("Tu Decl. Aug. 19 Mot. to Compel"), Dkt. No. 65 ¶¶ 7 ("On August 3, one day after the production deadline, Petitioner produced 31 documents . . . ."), 9 ("[On August 7,] Petitioner's counsel revealed that he had not yet received nor produced documents from his client, Aaron Teller."), 13 ("The parties held a telephonic meet and confer on August 14, 201[9], where Petitioner's counsel stated . . . that he may be producing further documents from Mr. Teller responsive to Petitioner's RFP."), 14 ("On August 16, Petitioner's counsel produced three more documents . . . .")).

Helbrans sought an order compelling Teller to appear for a deposition pursuant to the Walsh Act, 28 U.S.C. § 1783. (*See* Helbrans's Mot. to Compel Dep. dated July 25,

2019, Dkt. No. 35 at 1).  Teller resisted these efforts.  (*See* Teller's Mot. to Quash Dep.

dated Aug. 1, 2019, Dkt. No. 40).  On August 12, the Court denied Helbrans's motion to

compel without prejudice to renewal.  *Teller v. Helbrans*, No. 19-CV-3172, 2019 WL

3779863, at *1 (E.D.N.Y. Aug. 12, 2019); (Order dated Aug. 12, 2019, Dkt. No. 51).  On

August 15, Helbrans supplemented her earlier submissions and renewed her motion

under the Walsh Act.  (Mem. in Supp. of Helbrans's Mot. to Compel Dep. dated Aug. 15,

2019, Dkt. No. 59).

In response, Teller asked that his deposition be taken in Guatemala.  (Helbrans's

Mot. to Compel dated Aug. 16, 2019, Dkt. No. 61 at 6).  Teller's counsel also informed

the Court that Teller would not be testifying at the trial in New York and asked to appear

by videoconference, but he provided no reason why an in-person appearance was not

possible.[3]  (Letter from S. Michael Musa-Obregon dated Aug. 16, 2019 ("Musa-Obregon

Aug. 16 Letter"), Dkt. No. 63 at 1).

Helbrans also moved to compel Teller's production of documents on August 19.

(Helbrans's Mot. to Compel dated Aug. 19, 2019 ("Aug. 19 Mot. to Compel"), Dkt. No. 65

at 1).  Helbrans informed the Court that Teller "produced only 15 documents weeks after

---

[3] At a status conference on July 29, Teller's counsel indicated that "one of the
reasons" that Teller could not appear in the United States was because "last time he was
here, he was followed by the opponents of Lev Tahor everywhere he went in and out of
lawyers' offices. He was harassed. He was put into a very serious situation[.]" (Tr. dated
July 29, 2019, Dkt. No. 38 at 27:01–27:07).  The Court offered to arrange for protective
services to address any harassment concerns. (*Id*. at 27:08–27:10, 29:02–29:10).  The
Court reiterated its ability to enter a protective order in favor of Teller in its order
issuing the Walsh Act subpoenas: "any alleged harassment or other improper behavior
is preventable, at least as an initial matter, through this Court's entry of a protective
order, and Petitioner may file a motion seeking entry of such an order by demonstrating
the necessary good cause." *Teller v. Helbrans*, No. 19-CV-3172, 2019 WL 3975555, at *5
(E.D.N.Y. Aug. 21, 2019).  No attempt was made to seek a protective order and these
concerns were never voiced again.

the [document discovery] deadline, only after Respondent repeatedly prodded Petitioner and asked about specific categories of documents that should have existed in Petitioner's possession." (*Id.*). She recounted that on August 3, one day after the document discovery deadline, Teller's counsel said that Teller's final production had been sent. (*Id.*). But on August 7, 2019, Teller's counsel said, "I have not received any documents from Aaron Teller yet." (Email from S. Michael Musa-Obregon to Xiaoxi Tu dated Aug. 8, 2019 ("Aug. 8 Email"), attached as Ex. 3 to Tu Decl. Aug. 19 Mot. to Compel, Dkt. No. 65 at 1). Helbrans also asked the Court to amend the discovery and trial schedule because Teller had failed satisfy other discovery obligations. (Helbrans's Mot. to Amend Scheduling Order dated Aug. 19, 2019 ("Mot. to Amend Schedule"), Dkt. No. 66 at 1). His failures allegedly included: not serving discovery requests by June 21, not serving objections and responses to Helbrans's discovery requests by June 26, and not producing any documents by the document production deadline of August 2. (*Id.* at 1–2).

The Court granted Helbrans's motion for a Walsh Act subpoena. *Teller v. Helbrans*, No. 19-CV-3172, 2019 WL 3975555, at *5 (E.D.N.Y. Aug. 21, 2019). The Court explained that "[t]here is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness," and "it is highly unusual—perhaps unprecedented—for a petitioner not to appear at the hearing to testify in a Hague Convention matter." *Id.* at *1 (quotations omitted) (collecting cases). In granting the motion, the Court noted that although Teller refused to appear for a deposition or trial, "[t]here is no suggestion of cost, immigration, illness, infirmity, or other barriers to appearing in the United States." *Id.* As a result, the Court directed (i) Teller's counsel to provide an estimate of travel and attendance

costs for the deposition, (ii) Helbrans to provide subpoenas to be so-ordered for Teller's deposition and trial testimony and to arrange for service of the subpoenas pursuant to Federal Rule of Civil Procedure 4(f), and (iii) the parties to meet and confer about the date for Teller's deposition. (Order dated Aug. 21, 2019, Dkt. No. 69).

On August 22, a status conference was held with counsel for Teller, Helbrans, and all Respondent-Intervenors. (Min. Entry dated Aug. 22, 2019). In light of Teller's discovery failures, the Court adjourned the trial to October 29, 2019. (Order dated Aug. 22, 2019).

The Court then "so-ordered" two Walsh Act subpoenas compelling Teller to testify at a deposition in the United States and at the trial. (Order dated Aug. 27, 2019, Dkt. No. 80). After Teller's counsel provided an estimate of travel and attendance costs, the Court asked Helbrans to pay $3,340, which her counsel agreed to do. (*See* Letter from S. Michael Musa-Obregon Regarding Travel Expenses dated Aug. 27, 2019, Dkt. No. 79 at 1; Order Regarding Dkt. No. 79 dated Aug. 27, 2019; Letter from S. Michael Musa-Obregon Regarding Revised Travel Expenses dated Aug. 28, 2019 ("Teller's Travel Expenses Letter"), Dkt. No. 81 at 1; Letter from Adam Hemlock Regarding Witness Fees dated Aug. 28, 2019, Dkt. No. 82 at 1; Order dated Aug. 29, 2019).

Teller's counsel has repeatedly indicated that his client was aware of the subpoenas and their directive that Teller appear at a deposition and the trial. In one instance, where Teller's counsel said that Teller would not comply with the subpoenas, the Court explained:

> [Y]ou're going to be directed to tell him that the Walsh Act subpoenas are court-ordered, subject to the penalty of contempt . . . . [C]ertainly not showing up for the deposition would cause the Court to dismiss the petition with prejudice, full stop[,] . . . never to be filed again, and he loses. That's

> what the consequence of, in terms of his actual case . . . but willfully disregarding a subpoena, subjects him to a contempt sanction[.]

(Tr. dated Sept. 23, 2019 ("Sept. 23 Tr."), Dkt. No. 100 at 13:06–14:11). Teller's counsel interjected, "I've explained that [to him.]" (*Id.* at 14:01; *see also* S. Michael Musa-Obregon's Mot. to Withdraw as Att'y dated Sept. 28, 2019 ("Musa-Obregon Mot."), Dkt. No. 103 ¶ 9 ("As requested by the Court, counsel has served Mr. Teller by email, copies of the Court's two orders issued September 23, 2019 [regarding the Walsh Act subpoenas and motion to withdraw hearing] . . . . These orders have also been explained to Mr. Teller by counsel by telephone on September 23rd and 25th 2019. On those dates, Mr. Teller acknowledged to me that he had received the Court's orders which I earlier emailed to him."); Tr. dated Oct. 21, 2019 ("Oct. 21 Tr."), Dkt. No. 109 at 4:20–5:02 ("THE COURT: You also indicated to your client, Mr. Musa-Obregon, that he has to appear by court order at a deposition that was scheduled for October 18th. Is that correct?  MR. MUSA-OBREGON: Yes.")).

In September 2019, an agent attempted personal service on Teller of the two Walsh Act subpoenas and the check for the travel funds. (*See* McLean Aff. Regarding Service of Walsh Act Subpoenas dated Oct. 18, 2019 ("McLean Aff."), attached to Helbrans's Mot. to Dismiss, Dkt. No. 104 ¶¶ 5–8).  On September 7, 8, 11, and 15, the agent attempted to serve Teller by visiting a gated community in Guatemala at which Teller was known to be living with the Lev Tahor community. (*Id.*).  Personal service could not be accomplished. (*Id.*).  Members of the Lev Tahor community took steps over those four days to help Teller evade service by turning the agent away from their "private property" and refusing to accept service on behalf of Teller. (*Id.*).  The agent then had the documents sent via certified mail to Teller's Guatemalan address on

September 20.  (*Id.* ¶ 9).  A security guard at the gate of the community did not allow the delivery by the Guatemalan postal service.  (*Id.*).  Helbrans's counsel sent a copy of the two subpoenas to Teller's counsel via email.  (Email from Selma Haveric to S. Michael Musa-Obregon & Peter Kapitonov dated Sept. 22, 2019, attached as Ex. A to Haveric Decl. in Supp. of Helbrans's Mot. to Dismiss, Dkt. No. 104 at 1 ("Note that personal service was attempted three times, and was frustrated each time by members of Lev Tahor.")).  The subpoenas and check were made available for Teller to pick-up at a Guatemalan post office, (McLean Aff. ¶ 10), and Teller's counsel said that he would advise Teller as such, (*see* Decl. of Selma Haveric in Supp. of Helbrans's Mot. to Dismiss ("Haveric Decl."), Dkt. No. 104 ¶ 5.e; Email from S. Michael Musa-Obregon to Selma Haveric dated Oct. 11, 2019 ("Oct. 11 Email"), attached as Ex. B to Haveric Decl., Dkt. No. 104 at 1 ("[Haveric:] Please advise Mr. Teller that his court-ordered subpoenas to appear at a deposition and trial, along with a check for the appropriate fees, are being held at the post office below.") ("[Musa-Obregon:] Yes. I shall. Thank you.")).

On September 7, Helbrans asked the Court to draw an adverse inference against Teller because, as of that date, "Teller had not produced any documents responsive" to Helbrans's requests for production in violation of the Court's August 22 order. (Helbrans's Mot. for Adverse Inference dated Sept. 7, 2019 ("Mot. for Adv. Infer."), Dkt. No. 88 at 1 (emphasis removed)).  The only documents he produced were documents from Chayeh and Yakev Weingarten, both non-parties and purported members of Lev Tahor.  (*See* Decl. of Xiaoxi Tu in Supp. of Mot. for Adv. Inf. ("Tu Decl. Adv. Infer."), Dkt. No. 88 ¶ 10–11).  Helbrans's counsel also had learned that Teller's counsel had been unable to communicate with Teller.  (Email from S. Michael Musa-Obregon to Xiaoxi Tu dated Sept. 5, 2019 ("Sept. 5 Email"), attached as Ex. 5 to Tu Decl. Adv. Infer., Dkt. No.

88 at 1 ("I'm not getting communications from him as I should."); Email from S. Michael Musa-Obregon to Xiaoxi Tu dated Sept. 7, 2019 ("Sept. 7 Email"), attached as Ex. 6 to Tu Decl. Adv. Infer., Dkt. No. 88 at 1 ("I did have very limited communication with Mr. Teller yesterday, despite my many attempts."), 2 ("[Sept. 6, 2019] I have not heard from . . . Aaron [Teller] . . . though I believe I will today so we can wrap this up."); Email from S. Michael Musa-Obregon to Xiaoxi Tu dated Sept. 6, 2019 ("Sept. 6 Email"), attached as Ex. 1 to Tu Decl. Reply Adv. Infer., Dkt. No. 93 at 1 ("As I said, I unfortunately was not hearing back from Mr. Teller as I required.")).

A status conference was held on September 23, 2019. (Min. Entry & Order dated Sept. 23, 2019). Prior to the conference, Teller's counsel filed a letter stating that he wished to be relieved as counsel. (S. Michael Musa-Obregon's Mot. to Withdraw as Att'y dated Sept. 23, 2019, Dkt. No. 97 at 1). At the status conference, Teller's counsel provided some explanation for the request. (*See* Order dated Sept. 23, 2019). Among other things, he stated that he had experienced a "lack of cooperation" from Teller in gathering information, "the discovery process has had a lot of pitfalls, and [counsel] d[id]n't see an end to that potential process." (Sept. 23 Tr. at 12:12; 12:18–12:20). Counsel also learned that Lev Tahor may be moving to Iran; counsel had personal and litigation-based objections to such action, but he did not elaborate. (*Id.* at 8:03–12:09). The Court directed counsel to file a motion to withdraw as counsel as required by Local Civil Rule 1.4. (Order dated Sept. 23, 2019).

At the status conference, Teller's counsel again told the Court that Teller did not intend to appear for his deposition or the trial. (Min. Entry & Order dated Sept. 23, 2019). He stated, "Mr. Teller has indicated to me that he will not, even if properly served with a subpoena, be able to come to the United States." (Sept. 23 Tr. at 12:21–

12:23).  After the Court stated that Teller could be held in contempt, his case would be dismissed with prejudice if he did not appear for his deposition, and he could not "get the benefits of a court adjudication, and at the same time avoid the obligations that go along with them[,]" Teller's counsel stated that he had "communicated that to [Teller]." (Sept. 23 Tr. at 13:08–14:50; 18:21–19:10).

The Court then scheduled a hearing on the motion to withdraw as counsel and directed Teller to appear at the hearing.  (Min. Entry & Order dated Sept. 23, 2019; Order dated Sept. 23, 2019; *see also* Sept. 23 Tr. 17:08–17:13 ("You'll file a motion for withdrawal. I will set it down for a hearing. He will be directed to appear personally. . . . If he fails to show up, he's subject to a Rule 37 or Rule 41 sanctions for disobeying a court order.")).  The hearing was set for October 21, 2019, (Order dated Sept. 23, 2019); the date was intentional—to follow the date after Teller would have to appear for his deposition and in order to help Teller avoid incurring additional costs for appearing at the motion to withdraw hearing.  In the same order, the Court warned Teller that if he did not appear at his deposition or at the trial, the nonappearance would be "deemed a violation of a Court Order," and the Court would "dismiss the case with prejudice pursuant to Federal Rules of Civil Procedure 37 and 41."  (Min. Entry & Order dated Sept. 23, 2019).  Similarly, the Court warned that a "failure to appear at the motion to withdraw hearing may result in the Court imposing sanctions, including dismissal of the petition with prejudice, pursuant to Federal Rules of Civil Procedure 37 and 41, for having disobeyed a Court Order."  (Order dated Sept. 23, 2019).  The Court noted that it would not delay the commencement of the trial, set for the end of October 2019.  (*Id.*).  The Court directed Teller's counsel to serve these orders on Teller.  (Min. Entry & Order dated Sept. 23, 2019; Order dated Sept. 23, 2019).

On September 28, Teller's attorney filed a motion to withdraw, as directed. (*See* Musa-Obregon Mot. dated Sept. 28, 2019, Dkt. No. 103). In support of his motion to withdraw, counsel averred that "[a]s requested by the Court, counsel ha[d] served Mr. Teller by email, copies of the Court's two orders issued September 23, 2019." (*Id.* ¶ 9). "These orders ha[d] also been explained to Mr. Teller by counsel by telephone on September 23rd and 25th 2019. On those dates, Mr. Teller acknowledged to [counsel] that he had received the Court's orders which [counsel] earlier emailed to him." (*Id.*).

Teller's counsel listed several other "irreconcilable issues" he believed "render[ed] continued representation in conflict with norms of professional responsibility and the requirements for effective advocacy." (*Id.* ¶ 2). Counsel learned that the Lev Tahor community might move to Iran. (*Id.* ¶ 3). (If in fact true, Teller's representations that he filed the Petition to have his children returned to Guatemala for custody proceedings there would have been false). (*See* Relief Requested at 24 ¶¶ (a), (e)). Teller again indicated to counsel that he would not appear for the court-ordered deposition and trial. (Musa-Obregon Mot. ¶ 4 ("Petitioner has indicated that he will not appear for the court ordered deposition and trial in this instant matter . . . .")). Despite repeated requests, his lawyer admitted that Teller had "not timely complied with counsel's requests for information pursuant to the discovery orders imposed by this Court." (*Id.* ¶ 5). Counsel indicated that Teller informed him that Teller wished to retain a new attorney. (*Id.* ¶ 10).

On October 18, the deposition of Teller was convened. The attorneys for Helbrans, Y.C.T., and the Children Teller appeared. (Haveric Decl. ¶ 11). Teller, however, did not. (*Id.*).

A hearing was held on the motion to withdraw on October 21. (*See* Min. Entry & Order dated Oct. 22, 2019). Teller's counsel and counsel for the children appeared. (*Id.*). Teller did not. (*Id.*; Oct. 21 Tr. at 4:12–4:14 ("THE COURT: So I note Mr. Musa-Obregon, your client is not here; correct? MR. MUSA-OBREGON: That is correct.)). Teller's counsel told the Court that Teller had been told about the hearing, had chosen not to appear, and had not retained new counsel. (Oct. 21 Tr. at 4:15–4:19 ("THE COURT: And you provided [Teller] notice of this hearing by telling him that this was a motion to withdraw as counsel hearing and that you and the court had directed him to appear personally here today? MR. MUSA-OBREGON: Yes."), 5:03–5:12 ("THE COURT: Okay. And, Mr. Musa-Obregon, in . . . your motion to withdraw you said that in one paragraph that your client was seeking to obtain alternative counsel. As far as you're aware, has he obtained alternative counsel? MR. MUSA-OBREGON: No, he has not. THE COURT: It's correct, Mr. Musa-Obregon, that you made it clear as early as September 21st that you intended to withdraw as his counsel? MR. MUSA-OBREGON: Yes."); *see also* Email from S. Michael Musa-Obregon to David Kerschner dated Oct. 16, 2019, attached as Ex. C to Haveric Decl., Dkt. No. 104 at 2 ("Mr. Teller has not obtained new counsel as far as I know.")). The Court granted the motion to withdraw, as well as the motions to dismiss. (Min. Entry & Order dated Oct. 22, 2019).

DISCUSSION

I. <u>Dismissal with Prejudice under Rules 16(f) and 37(b)</u>

"A court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant . . . for disobeying the court's orders[.]" *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002). "The imposition of sanctions pursuant to Rule 37 (and . . . Rule 16(f)) is a matter committed to the sound discretion of the District

Court." *Neufeld v. Neufeld*, 172 F.R.D. 115, 118 (S.D.N.Y. 1997). The purpose of such sanctions, including dismissal, is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49–50 (2d Cir. 1994) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

A court may sanction a party for failing to appear—either at a court conference or as the Court directs. Rule 16(f)(1)(A) of the Federal Rules of Civil Procedure provides that a "court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party . . . fails to appear at a scheduling or other pretrial conference." Fed. R. Civ. P. 16(f)(1)(A). A court also has the ability to sanction a party for failing to abide by any of its orders. Fed. R. Civ. P. 16(f)(1)(C) (permitting sanctions where party "fails to obey a scheduling or other pretrial order."); *Martin v. Giordano*, 185 F. Supp. 3d 339, 354 (E.D.N.Y. 2016) ("When a party or its attorney engages in conduct proscribed by Rule 16(f), the court may issue any just orders." (quotations omitted)); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 35 (S.D.N.Y. 2014) ("Rule 37(b)(2)(A)(ii)–(vii), which Rule 16(f) references, sets forth a non-exclusive list of sanctions a court may impose against a party for failing to comply with a court order[,]" including dismissal.). "The court need not find that a party or litigant acted in bad faith as a prerequisite to imposing sanctions under Rule 16(f); [r]ather, the fact that a party violated a pretrial order is sufficient to allow a Rule 16 sanction." *Giordano*, 185 F. Supp. 3d at 354 (quotations omitted). Likewise, a court may impose a sanction for discovery violations. Fed. R. Civ. P. 37(b)(2)(A) (providing that a court may issue sanctions if a party "fails to obey an order to provide or permit

discovery"); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.").

The sanctions for such misconduct—whether it be a failure to appear, abide by a court order, or comply with discovery obligations—include dismissal. *See* Fed. R. Civ. P. 16(f) (adopting the sanctions authorized by Rule 37(b)(2)(A)(v)); Rule 16 advisory committee's note to 1983 amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery."); Fed. R. Civ. P. 37(b)(2)(A)(v) (including the sanction of "dismiss[al of] the action or proceeding in whole or in part"); *Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997) (collecting cases) ("[T]he standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37."); *e.g.*, *Valentine*, 29 F.3d at 50 (affirming dismissal under Rule 37(b)(2) after plaintiff's "sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders to appear for his deposition would result in the dismissal of his action"). Such a dismissal may be with prejudice. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[A]ll litigants . . . have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." (citations and quotations omitted)). "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Id.* (quotations omitted).

The Court considers several factors in determining whether to impose a sanction of dismissal with prejudice: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Id.* (quotations omitted); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). "[T]hese factors are not exclusive, and they need not each be resolved against" the non-compliant party for dismissal to be appropriate. *S. New England Tel. Co.*, 624 F.3d at 144. Ultimately, the Court must conclude under all of the circumstances whether dismissal would be "just." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007). "[T]he district court 'is free to consider the full record in the case'" in making this determination. *Wang v. Bear Stearns Cos.*, 308 F.R.D. 113, 120 (S.D.N.Y. 2015) (quoting *S. New England Tel. Co.*, 624 F.3d at 144).

A. Willfulness

Noncompliance—with a court order or discovery obligation—is willful where the party has received notice of the orders and discovery requests but repeatedly fails to comply. *See Coach Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011) ("The Court deems the noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply."), *report and recommendation adopted and modified on other grounds*, 2012 WL 1255276 (Apr. 13, 2012). "[T]his factor as formulated by the Second Circuit is not just willfulness, but the willfulness of the non-compliant party *or the reason for non-compliance.* . . . [T]he Second Circuit's inclusion of the latter phrase recognizes that dismissal may be warranted even in the absence of such open defiance." *Jin Fang Luo*

*v. Panarium Kissena Inc.*, No. 15-CV-3642, 2019 WL 360099, at *5 (E.D.N.Y. Jan. 11, 2019) (quotations omitted), *report and recommendation adopted*, 2019 WL 356939 (Jan. 29, 2019).

The Court examines first Teller's failures to appear and explains why those failures were willful and why Teller's subpoena avoidance strategy does not excuse his noncompliance. Second, the Court examines Teller's discovery failures and explains why those were willful.

### 1. Failures to Appear

Teller failed to comply with several court orders directing his appearance either in Court, at a deposition, or at the trial.

Teller first failed to appear for his deposition after the Court ordered his deposition and so-ordered a subpoena pursuant to the Walsh Act. *See Teller*, 2019 WL 3975555, at *5. These were not mere party-initiated directives; they were orders of the Court. *See* 28 U.S.C. § 1783(a) ("A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country[.]"). The Court warned Teller of the consequences of a failure to appear for the deposition, (Min. Entry & Order dated Sept. 23, 2019), and Teller's attorney notified Teller of the deposition and consequences of nonappearance more than once, (Sept. 23 Tr. at 13:08–14:01, 18:07–19:01; Musa-Obregon Mot. ¶ 9). Despite these warnings, Teller flouted the subpoenas. He told his lawyer to inform the Court that he would not appear, "even if properly served with a subpoena[.]" (Sept. 23 Tr. at 12:21–12:23).

Teller then failed to appear for the motion to withdraw hearing after the Court directed him to do so and warned him of the consequences of failing to do so. (*See*

Order dated Sept. 23, 2019; Min. Entry & Order dated Oct. 22, 2019). Again, Teller was on notice of the hearing and the consequences of not appearing: Teller's counsel had served on Teller by email a copy of the Court's order, Teller acknowledged receipt, and the order was also explained to Teller by phone. (Musa-Obregon Mot. ¶ 9).

Finally, Teller indicated his intention to disobey the Court's subpoena directing him to appear at the trial. (*See* Min. Entry & Order dated Sept. 23, 2019; Musa-Obregon Mot. ¶ 4); *see also Teller*, 2019 WL 3975555, at *5. While the trial has not commenced, not dismissing the case would require the Court to force all the other parties to prepare for trial and to commence the trial, only to then adjourn the proceeding. It is beyond peradventure that Teller will not appear. His counsel repeatedly told the Court as much, and Teller chose not to accept the funds for plane tickets that would enable him to appear for the trial. (Sept. 23 Tr. at 12:21–12:23 ("Mr. Teller has indicated to me that he will not, even if properly served with a subpoena, be able to come to the United States.")). As with the deposition subpoena, Teller was on notice of the consequences of not appearing at the trial: Teller's counsel served by email the order on Teller, Teller acknowledged receipt, and Teller's counsel explained the order. (*See* Musa-Obregon Mot. ¶ 9). There is no basis to conclude that Teller did not know about these required appearances.

Teller's attempt to evade service of the deposition and trial subpoenas does not compel a different conclusion. This was a futile and ultimately irrelevant exercise. The Court made clear to Teller that if he did not appear at his deposition, then his case would not proceed, and this message was communicated to him by his lawyer. (Sept. 23 Tr. at 13:06–14:11 ("THE COURT: . . . [C]ertainly not showing up for the deposition would cause the Court to dismiss the petition with prejudice, full stop . . . never to be

filed again, and he loses. . . .  MR. MUSA-OBREGON: I've explained that [to him.]")).

Teller's deposition was a party deposition, and the deposition notice can, therefore, be

served upon Teller's lawyer, which was first accomplished on July 9, 2019.[4]  (*See* Notice

of Dep. of Pet'r Aaron Teller, attached as Ex. 1 to Decl. of Xiaoxi Tu in Supp. of

Helbrans's Mot. to Compel Dep. dated July 25, 2019, Dkt. No. 35); *cf. First City, Tex.-*

*Hous., N.A. v. Rafidain Bank*, 197 F.R.D. 250, 254 (S.D.N.Y. 2000) (holding that a Rule

45 subpoena seeking documents and testimony from defendant was properly served

under Rule 5(b) when sent to the law firm that appeared for defendant), *aff'd*, 281 F.3d

48 (2d Cir. 2002); *see also DiFrancesco v. Win-Sum Ski Corp.*, No. 13-CV-148, 2017 WL

696838, at *4 (W.D.N.Y. Feb. 22, 2017) (denying in part motion to quash subpoena on

plaintiff that was served by email to plaintiff's counsel, noting that "[t]he jurisdictional

and process concerns of serving a subpoena (a document required to obtain jurisdiction,

albeit limited, over a person) over a non-citizen residing in a foreign country are

obviated when that person consented to proceed in this country as a plaintiff in this

Court.").  The issuance of the subpoena was to enforce compliance with this deposition

notice; this compliance process created a separate court order and subjected Teller to

contempt.  Evading the service of the Walsh Act deposition subpoena had no effect upon

---

[4] "If a party is represented by an attorney, service" of "a discovery paper required to be served on a party" "must be made on the attorney[.]"  Fed. R. Civ. P. 5(a)(1)(C), (b)(1).  A deposition notice is such a discovery paper.  *See id.*; Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person, including a party . . . ."), (b)(1) ("A party who wants to depose a person by oral questions must give reasonable written notice to every other party.").  A party may be compelled to attend a properly noticed deposition by subpoena under Rule 45.  *See* Fed. R. Civ. P. 30(a)(1) ("The deponent's attendance may be compelled by subpoena under Rule 45.").  Rule 45, in turn, provides that for "issuing and serving a subpoena directed to a United States national or resident who is in a foreign country[,]" the Walsh Act, "28 U.S.C. § 1783 governs[.]"  Fed. R. Civ. P. 45(b)(3).

the original deposition notice. By failing to appear at the deposition, Teller ignored a required and, in this case, central discovery obligation. Such a discovery violation would be enough to dismiss the case, even if the subpoena service was not effective.

But in any event, the various machinations that Teller and Lev Tahor engaged in to avoid service—refusing to accept mail, turning away the agent repeatedly, and escorting the agent off their property—did nothing to invalidate the service of either of the Walsh Act subpoenas. While the Walsh Act, like Rule 45, requires "personal" delivery of a subpoena—"they must be served upon Petitioner in Guatemala, consistent with Rule 4(f)[,]" *Teller*, 2019 WL 3975555, at *4—that requirement is not "a shield for a witness who is purposefully attempting to evade service." *See Cordius Tr. v. Kummerfeld*, No. 99-CV-3200, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000). "Personal" delivery is satisfied when the subpoena recipient—who has taken affirmative steps to avoid service—has "notice and an opportunity to present objections." *Id.* "Although compliance with the service requirements may not have been exact, they were substantial and sufficient." *Rafidain Bank*, 281 F.3d at 55 ("After First City's attempt to serve the 1998 Subpoena on an employee at the Iraq Mission was foiled by an employee at the Mission, the process server attached the subpoena to the door of the Mission in an addressed envelope, and sent another copy to Rafidain's then-counsel of record.").

The record is replete with the numerous instances where Teller's lawyer explained to the Court that he had discussed the subpoenas with his client. (*See, e.g.*, Musa-Obregon ¶ 9). There is little doubt that Teller knew about them. Indeed, in anticipation of the fact that the Court was going to issue the subpoenas, Teller himself provided information to the Court about the costs of flights from Guatemala and estimates for compensations for hotels and local transportation. (Teller's Travel

Expenses Letter at 1 ("I revise here, in accordance [with] the Court's finding yesterday, the travel expense estimate for Mr. Aaron Teller's attendance at a New York deposition and trial from October 17 to October 29 *as he has provided them to me*." (emphasis added))). The Court concludes that Teller had, at a minimum, constructive notice of the subpoenas themselves. *Cf. SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) ("There can be no doubt that by October 23, 1985 when the matter was tried before Judge Pollack, Leati and Lombardfin knew of the suit brought by the SEC and the claims against them."). By ignoring the deposition subpoena and making clear that he was going to ignore the trial subpoena, Teller has willfully violated the Court's orders that he appear in person to testify.

Thus, all of these failures to appear were willful. *See, e.g.*, *Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3193, 2018 WL 3104456, at *8 (E.D.N.Y. May 16, 2018) ("Having received these multiple notices, [plaintiff] had other options besides appearing or responding as directed. . . . Having done none of these things and having failed to appear or respond personally, the only conclusion to be drawn is that her disregard of the Court's orders was willful."), *report and recommendation adopted*, 2018 WL 3019875 (June 18, 2018) *and* 2018 WL 3094940 (June 22, 2018); *Coach Inc.*, 2011 WL 6122265, at *3 ("The Court deems noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply."); *Oakley v. Merck & Co.*, No. 07-CV-03652, 2010 WL 1779276, at *2 (S.D.N.Y. Apr. 27, 2010) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." (quotations omitted)).

2.  <u>Discovery Noncompliance</u>

Teller has engaged in ongoing and repeated discovery misconduct.  Besides failing to appear for his deposition, he failed to meet several discovery deadlines, including for the production of documents and exchange of objections and responses, which forced the Court to delay the trial.  (*See* Aug. 19 Mot. to Compel at 1; Mot. to Amend Schedule at 1; Mot. to Compel dated Sept. 7, 2019, Dkt. No. 88 at 1; Musa-Obregon Mot. ¶ 5).  Teller ignored his "counsel's requests for information pursuant to the discovery orders imposed by this Court."  (Musa-Obregon Mot. ¶ 5).  In addition, Teller's efforts to avoid discovery appeared to be a part of an orchestrated effort to limit the exchange of information and documents in tandem with non-parties to the suit; instead of providing his own documents, Teller was producing documents from a leader of Lev Tahor.  (*See* Aug. 8 Email at 1 ("I have not received any documents from Aaron Teller yet."); Tu Decl. Adv. Infer. ¶¶ 10–11).  When his counsel asked him to produce his own documents, Teller stopped communicating with his lawyer.  (Sept. 5 Email at 1 ("I'm not getting communications from him as I should."); Sept. 7 Email at 1 ("I did have very limited communication with Mr. Teller yesterday, despite my many attempts."), Sept. 6 Email at 1 ("As I said, I unfortunately was not hearing back from Mr. Teller as I required.")).

The Court finds Teller's noncompliance with discovery obligations to be willful. *See Urbont v. Sony Music Entm't*, No. 11-CV-4516, 2014 WL 6433347, at *2 (S.D.N.Y. Nov. 6, 2014) ("Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to . . . produce documents in violation of the district court's orders." (internal quotations and alterations omitted)); *e.g.*, *Battiste-Downie v. Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (affirming dismissal pursuant to

Rule 37(b)(2)(A)(v) because plaintiff "repeatedly defied discovery orders, despite the District Court's explicit instructions on several occasions that she was to respond to specific discovery demands propounded by defendants or face sanctions."); *Gayvoronskaya v. Americare, Inc.*, No. 15-CV-6641, 2019 WL 1352681, at *5 (E.D.N.Y. Feb. 19, 2019) (recommending dismissal with prejudice under Rules 16(f) and 37(b)(2)(A)(v) where plaintiff failed "to meet his discovery obligations" and "failed to maintain necessary contact with his counsel[,]" and those "failures to communicate also demonstrate[d] willful noncompliance with court orders"), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 52323 (Mar. 25, 2019); *DAddio v. Kerik,* No. 15-CV-5497, 2019 WL 2107721, at *4–5 (S.D.N.Y. Apr. 25, 2019) (recommending dismissal with prejudice where plaintiff's "conduct was willful" and "evince[d] a deliberate refusal to produce responsive documents or engage in discovery."), *report and recommendation adopted*, 2019 WL 2106178 (May 14, 2019); *Dungan v. Donahue*, No. 12-CV-5139, 2014 WL 2941240, at *4 (E.D.N.Y. June 30, 2014) ("Plaintiff's failure to cooperate in the discovery process notwithstanding the Court's clear admonitions, orders, and warnings demonstrates willfulness.  In particular, plaintiff refused to appear for deposition[.]").

B.  Efficacy of Lesser Sanctions

A sanction less than dismissal would not be effective.  When a court has given a plaintiff ample time to comply with court orders and warned him of the possibility of dismissal, and noncompliance has still continued, it is appropriate to dismiss the case. *See Gordon v. Peralta*, No. 10-CV-5148, 2012 WL 2530578, at *2 (E.D.N.Y. June 11, 2012) ("[T]he Court has tried the lesser sanction of allowing additional time[,] . . . and warning [plaintiff] of possible dismissal to no avail.  Requiring defendant's counsel to

appear again or imposing lesser sanctions on plaintiff would be futile at this juncture."
(citations and quotations omitted)), *report and recommendation adopted*, 2012 WL
2530106 (June 29, 2012).

The record allows for no basis to believe that a lesser sanction, such as a
monetary fine or any other sanction short of dismissal, would encourage Teller to
reengage in this litigation, especially given the repeated failures to obey. From the start,
Teller has resisted discovery, failed to attend any proceeding, and clearly never intended
to appear in the United States. His repeated attempts to evade service of the Walsh Act
subpoenas—which were accompanied by thousands of dollars in advanced payment for
airfare and hotel accommodations—demonstrate that Teller has no respect for judicial
process. No other sanction other than dismissal is appropriate. *See, e.g.*, *Bhagwanani
v. Brown*, 665 F. App'x 41, 43 (2d Cir. 2016) (finding no error in district court's
conclusion that "that no lesser sanction than dismissal would have sufficed" "in light of
the minimal discovery produced" and a record that suggested "persistent
noncompliance with discovery obligations"); *Dungan*, 2014 WL 2941240, at *4 ("[No]
other sanction short of dismissal would inspire in plaintiff the dedication to this
litigation that he currently lacks, especially given the demonstrable inefficacy of
repeated warnings that plaintiff's continued noncompliance would result in dismissal.");
*Gordon*, 2012 WL 2530578, at *2 (recommending dismissal despite only two
nonappearances because "any less drastic alternative to dismissal would be futile").

C. Duration

"[D]urations of time as brief as a few months have been held to weigh in favor of
dispositive sanctions." *Local Union No. 40 of Int'l Ass'n of Bridge, Structural &
Ornamental Iron Workers v. Car-Win Constr. Inc.*, 88 F. Supp. 3d 250, 265 (S.D.N.Y.

2015) (collecting cases) (adopting report and recommendation). "[P]eriods of six months or more weigh even more heavily toward such remedies." *Id.* at 266 (collecting cases).

The Hague Convention, however, presents a special set of circumstances. The Convention contemplates swift adjudication of petitions. *Ermini v. Vittori*, 758 F.3d 153, 167 (2d Cir. 2014) ("The Convention . . . stresses the importance of deciding matters 'expeditiously.'" (quoting Hague Convention., art. 11)). Swift resolution is necessary to avoid placing young children in limbo and having them face ongoing uncertainty about which country they must live in while their parents fight over their custody. The typical case must be adjudicated within six weeks of filing of the petition. *Jakubik v. Schmirer*, No. 13-CV-4087, 2013 WL 3465857, at *2 (S.D.N.Y. July 9, 2013) ("[T]he Convention's expectation [is] that such proceedings conclude 'within six weeks from the date of commencement of the proceedings[.]'" (quoting Hague Convention, art. 11)).

This case was filed in May 2019. The parties insisted that the case was complex and that a trial within a six-week window was not feasible. The Court adopted the parties' joint recommendation seeking a late September trial date. It was then adjourned to late October because Teller failed to meet his discovery obligations. (*See* Mot. to Amend Schedule at 1; Order dated Aug. 22, 2019). The second adjourned trial date has come and gone with no indication that Teller intends to appear—an intention that he first made clear in his letter dated August 16, 2019. (*See* Musa-Obregon Aug. 16 Letter at 1). Since his counsel has made clear that he intended to withdraw—on September 21, 2019—Teller has taken no steps to retain a new lawyer. The result of this delay has been to prolong not only resolution of the Petition but also to freeze the New York State custody proceedings—which were automatically stayed—in a state of

suspended animation, delaying Helbrans's ability to obtain final custody over her children. *See Yang v. Tsui*, 416 F.3d 199, 203 (3d Cir. 2005) ("[T]he Hague Convention provides that any state court custody litigation be stayed pending the outcome of the Hague Convention litigation." (citing Hague. Convention, art. 16)); (Tr. dated June 14, 2019, Dkt. No. 12 at 28:16–28:20 (MR. MUSA-OBREGON: Your Honor, the family court judge has stayed her proceedings . . . based on the filing of my petition.")). A delay of a week or two in a Hague Convention case, which is to be resolved in a matter of weeks, can be prejudicial and highly problematic. Teller's intentional delay, disregard of discovery deadlines, and violation of this Court's orders has gone on for far longer than a few weeks. And having made no attempt to explain or remedy this behavior, Teller's actions lead the Court to decide enough is enough.

  D. <u>Notice</u>

 "[T]he Second Circuit has repeatedly upheld dismissal as an appropriate sanction where the non-compliant parties were warned of the possibility." *Car-Win Constr.*, 88 F. Supp. 3d at 266 (quotations omitted).

  Here, the Court warned Teller on several occasions that his case would be dismissed if he failed to appear for his deposition, trial, or the motion to withdraw hearing. (Sept. 23 Tr. at 13:23–14:05; Order dated Sept. 23, 2019; Min. Entry & Order dated Sept. 23, 2019). These warnings were communicated to Teller. (*See* Sept. 23 Tr. at 14:01; Musa-Obregon Mot. ¶ 9). The Court finds that Teller had adequate notice of potential dismissal. *See, e.g.*, *Agiwal*, 555 F.3d at 303 (Plaintiff "defied all of [the Magistrate Judge's] orders, each of which warned of the possibility of sanctions, including dismissal."); *Manigaulte v. C.W. Post of Long Island Univ.*, 533 F. App'x 4, 6 (2d Cir. 2013) ("[Plaintiff] has repeatedly refused to be deposed, relying solely on his

unsworn and unsupported assertion that he is unable to do so . . . .  The magistrate judge twice warned [plaintiff] in court orders that he would recommend dismissing his action with prejudice if he failed to appear for his deposition.  In such a situation, the district court did not abuse its discretion in dismissing [plaintiff's] claims with prejudice."); *Cadet v. ADP, Inc.*, No. 11-CV-3240, 2013 WL 6058918, at *8 (E.D.N.Y. Nov. 14, 2013) (adopting report and recommendation) ("Plaintiff has been explicitly warned . . . that his case would be dismissed if he failed to appear for court conferences."); *Martin v. Metro. Museum of Art*, 158 F.R.D. 289, 292–93 (S.D.N.Y. 1994) (adopting report and recommendation) (finding it "clear," after one warning by the court, that "plaintiff received adequate notice that his failure [to comply with a court order] would result in dismissal").

The balance of the factors discussed above, therefore, warrant dismissal with prejudice of Teller's Petition, pursuant to Rule 37(b)(2)(A)(v), for his violations of Rules 16(f)(1)(A) and 16(f)(1)(C).[5]  *See, e.g.*, *Wang*, 308 F.R.D. at 120 (dismissing plaintiff

---

[5] A district court also may dismiss a case pursuant to Rule 41(b) when "the plaintiff fails to prosecute or to comply with [the] rules or a court order."  *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014); Fed. R. Civ. P. 41(b) (permitting defendant to move for dismissal where "the plaintiff fails . . . to comply with . . . a court order").

Courts generally dismiss cases under Rule 41(b) for failure to prosecute; this is not a failure-to-prosecute situation.  Disregard of court orders, however, is a separate avenue for dismissal under Rule 41(b).  *See, e.g.*, *Lamont v. Edwards*, 690 F. App'x 61, 63 (2d Cir. 2017) ("We conclude that the district court did not abuse its discretion in dismissing Lamont's complaint for failure to comply with multiple district court orders pursuant to Rule 41(b)[.]"); *Zappin v. Doyle*, No. 17-CV-8837, 2018 WL 2376502, at *5 (S.D.N.Y. Apr. 10, 2018) (dismissing plaintiff's claims with prejudice under Rule 41(b) for "dilatory conduct" and "persistent disregard of [court] orders."), *aff'd*, 756 F. App'x 110 (2d Cir. 2019); *Georgiadis v. First Bos. Corp.*, 167 F.R.D. 24, 26 (S.D.N.Y. 1996) (granting motion to dismiss in part under Rule 41(b) "for the failure to comply with the Court's discovery order" requiring interrogatory responses).

Although there are sufficient, independent bases to dismiss this case with prejudice pursuant Rules 37 and 16, the Court also finds that dismissal is warranted

Wang's complaint with prejudice pursuant to Rule 37 "because the Wangs and their counsel repeatedly and willfully obstructed Bear Stearns' efforts to depose Mr. Wang . . . [and counsel] refused to accept service of any subpoena.").

CONCLUSION

For the reasons stated above, the Court grants the motions to dismiss and the Petition is dismissed with prejudice pursuant to Federal Rules of Civil Procedure 16, 37, and 41. In light of the dismissal of the Petition, all other pending motions are denied as moot. The Clerk of Court is directed to close the case.

SO ORDERED.
*/s/ Sanket J. Bulsara* November 7, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

when considering the factors for dismissal under Rule 41(b). In addition to the Rule 37 factors, courts consider two additional, nonoverlapping factors for dismissal under Rule 41(b): "whether further delay would likely prejudice the defendant" and "the balance between the need to alleviate court calendar congestion and plaintiff's right to an opportunity for a day in court[.]" *Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3324, 2018 WL 3019875, at *1 (E.D.N.Y. June 18, 2018) (quotations omitted) (adopting report and recommendation). The Court finds both of these factors are met in this case, warranting dismissal under Rule 41(b).